CITY OF CLIFTON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF, v. PASSAIC VALLEY WATER COMMISSION, A PUBLIC CORPORATION OF THE STATE OF NEW JERSEY, CITY OF PATERSON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND CITY OF PASSAIC, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided January 5, 1960.

*Mr. Oscar R. Wilensky* for the plaintiff (*Mr. Edward F. Johnson,* attorney).

*Mr. Benjamin J. Spitz* for defendant Passaic Valley Water Commission.

*Mr. Adolph A. Romei* for defendant City of Paterson (*Mr. Harry L. Schoen,* attorney).

*Mr. William N. Gurtman* for defendant City of Passaic.

GRIMSHAW, J. S. C. The plaintiff seeks a judgment declaring void a resolution of the defendant Water Commission, dated September 15, 1957, increasing the rate charged the Clifton Water Board for water purchased by it to $110 per million gallons on and after January 1, 1958. It also seeks a judgment declaring that the Water Board of the City of Clifton has a status equal to that of any other consumer within the cities of Passaic, Paterson and Clifton, entitling it to rates similar to those paid by other customers of the Commission within the designated area. And finally, it seeks a judgment directing the Commission to repay to it water fees charged in excess of those charged to other customers within the Commission's area between 1952 and this date.

The defendant Commission, which is joined by the cities of Passaic and Paterson, denies that the rate being charged the Clifton Water Board is excessive. It alleges that under the statute it is required to charge the Clifton Water Board the same rate as that charged non-participating municipalities outside of the Commission's area. And it seeks a judgment compelling the Clifton Water Board to pay to the defendant Passaic Valley Water Commission the difference between the amounts paid and the rate of $110 a month set as the rate for wholesale consumers.

The facts leading up to the present controversy are, briefly, as follows:

In 1931 the Legislature, by *R. S.* 40:62–108 *et seq.,* authorized the acquisition by two or more municipalities of privately owned waterworks which supply the respective

municipalities. Acting under the authority of the statute, the cities of Passaic, Clifton and Paterson proceeded to take over the waterworks and distribution system of the Passaic Consolidated Water Company. The area then being served by the Water Company was all of Paterson and Passaic, and a portion of the City of Clifton. That portion of Clifton not served by the Water Company was served by a distribution system constructed and operated by the City of Clifton, the water used in such system being purchased from the Water Company.

*R. S.* 40:62–127 provides:

"Such commission may prescribe and change from time to time rates to be charged for water supplied by the waterworks so acquired, and by any extension or enlargement thereof, but rates for the same kind or class of service shall be uniform in all the municipalities supplied by the waterworks. As soon as practicable after acquiring the waterworks rates shall be prescribed, and shall be revised from time to time whenever necessary, so that the waterworks shall be self-supporting, the earnings to be sufficient to provide for all expenses of operation and maintenance and such charges as interest, sinking fund and amortization, so as to prevent any deficit to be paid by taxation from accruing. * * *"

The statute also provides for the sale of surplus water by *R. S.* 40:62–134, as amended, which reads in part as follows:

"The commission or its successor may sell any surplus water not needed to supply the municipalities represented by it to any consumer or to any private water company in this State supplying water to consumers, or any municipality outside of the municipalities represented by the commission, as provided by contracts with the water company which the commission took over as part of the property condemned, and outside of any territory supplied in whole or in part by the water company at the time of taking over the water works. * * *"

Following its organization the Passaic Valley Water Commission promulgated a schedule of retail rates which generally provided for a sliding scale based upon the amount of water consumed and wholesale rates which were charged

outside municipalities and water companies at the flat figure
of $110 per million gallons. The retail rate charged has
been $78 per million gallons. The wholesale rate has re-
mained fixed at $110 per million gallons.

Between 1932 and July 1, 1952 the Clifton Water Board
paid at the rate of $78 per million gallons for the water
purchased by it. On July 1, 1952 the rate charged Clifton
for its Water Department was raised to $92 per million
gallons. And as of September 16, 1957 the Commission
determined that commencing January 1, 1958 Clifton should
pay for the water consumed by its Water Department the
sum of $110 per million gallons, or at the rate charged to
non-member municipalities and water companies.

In the adoption of its rate schedule the Water Commis-
sion treated as retail customers all those who were served
directly by the Commission and who consumed the water
themselves. The wholesale rates were applied to municipali-
ties and water companies which bought water and resold
it to others. These distinctions, it is agreed, are common
throughout the country.

The Commission justifies the rise in the rates charged
the Clifton Water Board by pointing to the provisions of
section 127 above referred to. It argues that since the
Clifton Water Board resells the water which it purchases
from the Commission, it must be placed in the same class
as outside municipalities which purchase water for distribu-
tion in their respective communities.

 I do not think that such a determination is justified
by the statute. It is perfectly clear from a reading of that
statute that it was intended that all of the persons and
industries within the various municipalities who participated
in the organization of the Water Commission should be
treated on exactly the same basis as all other members of
the community. The district covered by the Clifton Water
Board is, of course, a part of the City of Clifton, which is
one of the participating owners of the system. If the Com-
mission may charge the Clifton Water Board the same amount

charged outside municipalities, it may very well be that residents and industry within the City of Clifton will be charged for water at a higher rate than those others similarly situated in the same community. Such was not the intent of the statute.

While it is true that the Clifton Water Board is like outside municipalities in the sense that it resells the water which it purchases, there is an important difference. The Passaic Valley Water Commission was created for the equal benefit of all of the residents of Paterson, Passaic and Clifton. They have priority of supply as against non-member municipalities and water companies, and must also have priority of rate. If the intent of the statute is to be carried out, the Clifton Water Board must be supplied at a rate which will enable it, in turn, to supply the customers serviced by it at the same rate charged similar customers in the cities of Paterson and Passaic and that portion of Clifton not serviced by the Water Board.

So far as a repayment to the City of Clifton of the amounts paid in excess of $78 per million gallons is concerned, that claim comes too late. Between 1952 and 1957 Clifton paid at the rate of $92 per million gallons without complaint. In the same period the Passaic Valley Water Commission made rebates to the participating municipalities based upon the income received in excess of operating expenses. To permit a repayment to Clifton for the amounts voluntarily paid between 1952 and 1957 would, it seems to me, be unfair to the other municipalities.

Judgment accordingly.